Mr. Woodward, when you're ready. If it pleases the Court, good morning, Mr. Chairman. Good morning, Your Honors. On behalf of Mr. Gamez, we're seeking reversal of the District Court's decision imposing a sentence upon him and asking for remand for resentencing. The first basis upon which we request relief is based upon the ACCA predicate, that being arson under Indiana law. Indiana law is somewhat unique in the way it defines its arson because it lists a series of means by which the titled arson can be committed. And the one at issue here is when a person who, by destructive device, by means of, I should say, a destructive device, knowingly or intentionally damages, in this case, property of any other person under circumstances endangering human life, commits arson. Now, we know, applying the Taylor categorical approach, that we have to compare the elements of Indiana's arson statute against the federal generic version. There's a little wiggle room in this circuit, I think, based upon the Misletic case as to whether that's an 844I comparison. It says that at least at one point in the opinion, or a more general version. But the opinion makes clear, for all intents and purposes, that when we speak of arson, we're talking about, for federal comparison purposes, an intentional or malicious burning of any property, regardless of value or amount. Which is really the generic arson, as we set forth in Misletic. That's a little different than the 844I. It is a little different, but earlier in the opinion, the opinion does allude to the fact that this court refers to 844I in its comparison. But regardless, it doesn't matter. If we use 844I, Section 81, as the government proposes, or the generic version, Indiana cannot meet and match those elements, because it's substantially broader than any of those three. Now, the first step in the analysis, we have to go through the means elements. The generic arson doesn't contain any means? So do we need to do that? Yes, we do. Because it requires a burning. And that's really the meat of the matter in this case. Go ahead. Go ahead. Well, you can create, and the statute defines, damage. It doesn't talk about burning. It talks about damage. And that damage can be inflicted by a destructive device. Destructive device is defined under Indiana law. Right, and go ahead and compare that to the, when you compare that to the, let's just stay with the generic definition. Stay out of 844I for a second. The generic definition, I think we can all agree, I think you agree with this in your brief, that it is causing a fire explosion with the purpose of destroying a building or property, correct? No issue with that, Your Honor. Right, right, okay. So why couldn't the causing of the fire or explosion have been done by a destructive device? There's unlimited means by which it could occur. Because the statute doesn't require a fire. Could a fire by happenstance occur? Or explosion causing a fire or explosion? Anything would qualify. You could, let's say one were to throw a pillow at a lamp and it shorted out the lamp and it caused a fire. And certainly I don't think that would be arson under Indiana statute. And nor would it be arson, I don't believe, under the federal generic version of arson. Well, if it isn't arson under either statute, we don't have a problem. And nor is a destructive device, which doesn't cause a burning arson either, for the same reason. That is, a destructive device is any, specifically an overpressure device. You're talking about for purposes of Indiana law. For purposes of Indiana law. When we talk about a destructive device, we're talking about, it's defined at least in part by an overpressure device. And this is where the statute gets overly broad. Because an overpressure device could consist of CO2 as a propellant. Or compressed air as a propellant. Under Indiana law, as a matter of fact, any firearm which is not used for lawful sporting purposes or self-defense can also be a destructive device. I thought there was a carve-out. The carve-out is for the rifle, shotgun, handgun that is used for sporting purposes or for personal self-defense. Those are accepted. That is the carve-out. But take, for example, a sawed-off shotgun. That's not used, that's an illegal weapon. It's not used for sporting purposes, nor is it used for self-defense. It could be, but it would be illegal to do so. Well, you could fire one of those weapons into a building, busting out the glass. That meets the definition of arson under Indiana statute. And are there cases that so hold in Indiana? Well, the advent of the destructive device being added to the definition is of relatively recent vintage. I think that was enacted after the turn of the century. You can broaden your hypothetical. Are there cases that prosecute individuals in Indiana for arson where they illegally use a sawed-off shotgun or some similar device? I don't think either party has pointed to one. I don't remember reading any. I'm just not aware of that issue ever having come up. Now, we know under the appropriate analysis, if there is no decision, interpreting if this particular means qualifies, that we look to the statutory text. That's the next step in our analysis. And the text is pretty clear because it says either three of these means qualify as that particular element. So, again, it's easy to conflate combustion of the propellant with fire of the dwelling or property or whatever it is, is the intent of the arson. That's not what the statute prohibits. In fact, counsel, as I understand it, the destructive device means was added to the Indiana statute after the enactment of ACCA, right? So ACCA was enacted in 1986. I think back in 1986, the only means that the Indiana statute covered was fire or explosive. And it didn't have a destructive device. Is that your understanding as well? It is because I think the destructive device was added, if I'm not mistaken, in 2002. So that would have been 16 years after the ACCA was enacted. So that is correct. And is that something that we should take into our analysis or should we take that into our analysis? Well, unfortunately, Indiana doesn't have legislative history, so to speak, that we can refer to. So it would just be speculation to say that destructive device was added or the statute was amended merely because of that federal statute. I think it would be pure speculation at this point. So the short answer to your question is I don't think we need to take that into consideration, nor should we, because we just don't know. So is your argument that under Indiana law, you can be prosecuted for arson if you cause the fire by using an illegally sought-off shotgun, but you can't be prosecuted for arson using that means under the federal statute? Is that your argument? No, let me back up to the first part of your question, because fire is not required under Indiana law. So could you be prosecuted under Indiana law if a fire occurred as a result of the use of, and I like to use the more extreme example, CO2 as a propellant or compressed air as a propellant. One could start a fire using one of those items or a destructive device that uses CO2 or compressed air as a propellant. You could. But you don't need to, right?  As I read the statute, what the statute requires when it comes to the impact is damage of any kind, whether damage by fire, whether there's a hole in the wall or a hole in the window. And so if you use a CO2 propellant of some sort, right, that would come within the definition of destructive device, and you use the CO2 to propel, say, a BB or some sort of projectile, and it goes to the window of a house, technically, at least the way the statute reads, that would fit the Indiana definition of arson. It would fit the Indiana definition, yeah. And there's no burning or there's no fire or explosive that is at all involved there. It's certainly not required. It's not required. Under an unambiguous, clear reading of this statute, it's simply not required. The only thing that's required is damage and not burning at all. So are there any examples of where Indiana has prosecuted arson based on the CO2 example or something where there wasn't a fire? I'm not aware of any case where they prosecuted using a destructive device. I wish there were some reported opinion. Then how do you get around our case law that says there must be a reasonable possibility, not a theoretical, a reasonable probability, not just a theoretical possibility, that the government would apply the statute? I think we fall back to the directives of how we interpret these statutes. First, we look at the court decisions. Well, there aren't any. Second, we look at the statute itself, and the statute is clear and unambiguous. It simply says that all we need is damage, we don't need burning, and it can be done by a destructive device. End of story. It's that simple. In the abstract, it is. I think I could give innumerable real-life examples where one doesn't have to think of these extraneous hypotheticals to get to that point. The ones I proposed already, I think, could get us there. I think you could also look at the Pattern Jury Instructions. Indiana's Pattern Jury Instructions sort of more or less mimic the statute. And the one entitled arson, parenthetically, is labeled damaging dwelling. It doesn't say burning dwelling. It says damaging dwelling. So it's clear the focus of the statute is damage to a dwelling, not necessarily fire, and that's why destructive device. Otherwise, there's no need for destructive device. Otherwise, we write it out of the statute. Yeah, and I wonder, do we know this at a minimum? For those cases that have been prosecuted under the Indiana statute, are there cases where there has been some kind of device used to cause an explosion, even if the explosion results in damage to property but doesn't result in fire? I think an explosion undoubtedly qualifies under the statute. Even if it doesn't result in any fire? Yeah, I don't think because it talks about the use of an explosive device. Well, an explosive doesn't have to create a fire necessarily. Right, so okay. So there's an example of something where we have no burning, we have damage, and you're saying we have arson. That would actually work in favor of the gammas, I think. Because if the generic version requires a burning, an explosive doesn't. Okay, why do you say the generic definition requires burning? As your Honor said, Ms. Levick defines generic arson as the intentional or malicious burning of any property, regardless of value or amount of damage. That's on page 17 of our brief. Okay, we'll give you a minute back on rebuttal for that. We'll hear from Mr. Whalen and then you can come back. Thank you. Good morning, Your Honors. Good morning. I'm Nathaniel Whalen here on behalf of the United States of America. And Judge Scudder, I guess I'd like to start where you left off. The Ms. Levick opinion gives kind of two different definitions of the generic arson. And I think this shows why the means don't matter. What Your Honor quoted is the definition in Begay, which is arson is causing a fire or explosion with the purpose of, and then it gives a couple examples. This court in Ms. Levick quoted that. And that's its pin site 985. The court then later goes on and kind of condenses that into a single definition at the end of the opinion of the intentional or malicious burning of any property. So it really isn't drawing a distinction between how the burning arises or, you know, the difference between use of fire or explosion. Ultimately, what this court said is we're going to generally look and see if there's a burning, right? It doesn't really matter how that happens. Now, the defendant's position, as I understand it now, is that you can somehow commit arson through a destructive device without causing any burning. I agree with the defendant. There are zero cases interpreting explosive device or destructive device under Indiana law. But both parties rely upon 35-43-1-1. Sure, Your Honor. It certainly says destructive device, Your Honor. And then the definition of destructive device under 35-47.5-2-4, right? That's correct, Your Honor. And just a point of clarification, that does exclude shotguns. So the hypothetical we're talking about about shotguns just wouldn't apply. And that's part of the problem that we're getting into here, Your Honors, is that the defense is asking this court to speculate on how Indiana would interpret its own statute. But counsel, as I understand it, under the case Aguirre-Zuniga v. Garland, which you don't contest, the realistic probability test applies when a statute is ambiguous or has indeterminate reach. Here, given the definition of arson and definition of destructive device, what is your argument that there's some ambiguity in how the statute is written? The ambiguity comes in the damages language, Your Honor. The arson statute does say that there has to be a damage to the property via the destructive device. Now, the defense's position, as I understand it, is damage can be effectuated by any means. And so theoretically, there could be some case out there where the damage is effectuated via a destructive device that doesn't involve a burning. Well, in fact, if you look at the way the statute is written, a person who, by means of fire, explosive, or destructive device, knowing they're intentionally damages, presumably destructive device is meant to mean something other than fire and other than explosive. Otherwise, it has to mean something different. Sure, Your Honor. And it's the way that the actual burning is effectuated. And let me explain why we're looking at burning. If you look at the Indiana case we cite, Williams v. State, and that's it. I can give Your Honors the citation, but it's in our brief. It talks about what the corpus delicti of an arson case is. And corpus delicti under Indiana law is that thing that has to be proven in every case. I'm not particularly familiar with the Indiana Rules of Procedure. But essentially, as it relates to federal law, if you did not prove this thing, you're going to be Rule 29'd out. You've not presented sufficient evidence. And that's what the court talks about. The Indiana Supreme Court talks about in the Chinot case that we also cite. It talks about what the corpus delicti is. But isn't corpus delicti – I mean, it's been a while since I've taken Latin – but isn't corpus delicti about sufficiency? That this is what – there wasn't a case talking about those particular facts. And if we have this, then for sure we have sufficiently – have enough to prove arson. The way Indiana has interpreted corpus delicti is it's that thing that must be proven in every case to sustain a conviction. And that's what the Chinot case talks about. There are two different standards that they go through in Chinot. And Chinot talks about sufficient to get a confession in, but then sufficiency to prove beyond a reasonable doubt. So in every instance, Indiana courts have to – or the state prosecutors have to prove this corpus delicti to prevail on a conviction. And so we're asking under the categorical approach, what does the state have to prove in every instance? In Indiana law, you have to prove this corpus delicti. So if you look at the Williams case, this Indiana appellate court case, what it says is the corpus delicti for arson is an incendiary burning. So in every instance, you have to prove an incendiary burning. That's the corpus delicti of arson. That isn't part of the jury instruction. Correct. That is not part of the jury instructions. In fact, they draw a distinction between what the jury must find. But what they do say is that it's what the state must prove beyond a reasonable doubt to sustain a conviction. So there cannot – How can they say that if it's not something that you're instructed on? Well, Your Honor, it's similar to, you know, if there's a murder, right? You have to prove that there's evidence of a dead body. That is not something you need to prove to prevail on a murder necessarily. It's what sometimes is called the identification defense, right? Or not defense. I'm sorry. The identification sort of element, for lack of a better phrase. You have to prove this thing out there exists to show that there was a crime committed. And why it becomes important in the arson context is because every fire is presumed not intentional until the state proves there was a malicious burning. So that's what gets it over the threshold to now where the state can go ahead and sustain a conviction. So under Williams, in every instance of arson, the Indiana state courts have to prove that there is a burning. And that, Your Honors, is where the problem comes in for Mr. Gamis, right? His argument is that you can commit a destructive device arson via some damage that has nothing to do with burning. Well, that conflicts with Williams. There's also no reasonable probability the state's ever going to charge it that way. And we know that because the state has never charged it that way. He hasn't pointed to his own case, any other case where it's ever been charged along those lines. So when we're looking at the categorical approach, we say, is there any reasonable probability the state's going to charge it and prove it in a non-generic manner? But as Judge Lee said, we only get to that if it's ambiguous. And, Your Honor, I would submit that Williams renders it ambiguous because it talks about what the damage is under the arson statute, right? If the defendant's position is that damage could mean something unrelated to the burning, that there could somehow be some sort of damage to the hole in the wall that Judge Lee referenced, that that could theoretically be a damage under the Indiana arson statute. The problem is there's no evidence to believe that Indiana would ever actually charge that as an arson. Have courts – is there any court that has said you can look to the Supreme Court of a state's interpretation of a statute when applying the categorical approach? Well, that's what this court talks about in Duncan, for example. When we're talking about how to interpret a statute, we look at the state court's interpretations of this statute. And that's what Duenas-Alvarez talks about. Gonzalez v. Duenas-Alvarez, the Supreme Court, they say, listen, we don't want federal courts interpreting state court statutes, state court law. And so, respectfully, the federal courts are bound by a state court's interpretation of its own statute. And so this court is bound by Indiana's interpretation of its own statute. Counsel, getting back to the corpus delicti, there's this case – so Williams v. State was an Indiana court of appeals case, right? That's correct, Your Honor. So there's another case, Fox v. State, which is another Indiana court of appeals case, 384 Northeast 2nd, 1159. Correct. And there they say they distinguish corpus delicti of arson versus the elements of arson, right? And it just says proof of corpus delicti only means proof that the specific crime charge has actually been committed by someone, right? And so here – so it's not a complete, as close a fit, or it's not a perfect fit between corpus delicti and our analysis. Because here, we actually have to look at the elements of arson, right? And so just by looking at the corpus delicti of arson, that doesn't kind of complete our analysis. I agree with that, Your Honor. And in Williams, it does draw that distinction, too, between the corpus delicti and the elements of the offense. It's something in addition to the elements the state has to prove in every instance. But what the categorical approach – That's kind of a necessary precondition. In other words, you can't prosecute – you can't prosecute Defendant X for the murder of John Doe if John Doe is still alive. That's correct, Your Honor. Right? And so that indictment would be thrown out if the alleged victim is still alive. That's classic corpus delicti common law. That's correct. And as it relates to arson, you couldn't prove an arson without proving there's a malicious burning in every instance. So you're saying as that kind of precondition, you take that corpus delicti analog or that principle to the construction of the arson statute, and you have to start with a burning. That's correct, Your Honor. And then you can go ahead and work your way through the elements. That's correct, Your Honor. But your point would be you can't construe the elements in a way to unwind the threshold principle. My point, Your Honor, is the Indiana courts have construed it that way, right? And so the Indiana courts have said that you cannot sustain an arson conviction without this malicious burning in every instance. And, Your Honor, judgely, I understand Your Honor's point that generally when we talk about the categorical approach, we're looking at the elements of the offense. That's what the Supreme Court has said. But what we're looking at really to get at the bottom of the categorical approach is what did the state have to prove in every instance to show that a defendant is guilty, right? We don't want to look at the facts underlying the defendant's conviction. We want to say as a matter of law, what did the state have to prove to render this particular defendant guilty? And under Indiana law, the state had to prove that there was a malicious burning. Now, to the extent that this court might conceive of some way where a destructive device could somehow cause damage and be charged under arson, the problem with doing that is it flies in the face of Williams and the discussion of what this corpus delicti is, right? Because there's no way that you could ever prove an arson without proving the burning under Indiana law. And so I understand that the court can look at the plain language of the statute and invent hypotheticals where maybe there could be this destructive device that causes a damage without burning. There could be hypotheticals like that that we could sit here and come up with all day. The problem is that it flies in the face of Indiana law. It also is not consistent with the categorical approach analysis, which asks, is there a reasonable probability the state is ever going to charge it in this way? Has the Indiana Supreme Court passed on or stated that the corpus delicti of arson is a burning, or is it just the Sixth Circuit? Is it just the Indiana Court of Appeals? Your Honor, the case we cite is Williams, as you noted. I would have to go back and re-read Fox. I take it, Your Honor, might have Fox up there. I would have to go back and double-check with Fox to make sure that's not an arson case. I do think that prior to, well, down below in Williams, the court cites Simmons v. State, which is a 1955 case that talks about the corpus delicti of arson is not proved by mere proof the property burned. The law infers the fire was a result of accident or some providential cause rather than criminal design unless the evidence proves otherwise. I can't definitively stand here and say that in Simmons it did say that it's a burning. However, I do believe, Your Honor, that that's what Simmons said. It's certainly what Williams relies upon. And so, counsel, when you're getting back to kind of the statute and the way the statute reads, by means of fire, explosive, or destructive device, again, it would tend to lead one to conclude that destructive device must mean something different than fire or explosive, right? And so is there a burning that is different than fire or explosive? Well, I think it could be a chemical burning. I think it's, you know, some of the federal definition of explosive in 844J, I believe it is, I think talks about how you could have a chemical explosive. And so if it's – I think if your argument is that damages, as stated in the statute, kind of implicitly means burning, which I think is kind of what we're coming down to, then why have by means of fire or explosive at all in the statute? As opposed to burning, Your Honor? Right, or if – I think you're saying that the statute says damages, but you say that under Williams damages means a burning, right? That's correct, Your Honor. And if that's the case, then why have, by means of fire, explosive at all? Your Honor, that's a tough question to answer. I can't put myself in the mind of the Indiana legislature. What I would say, though, is in Mislavik, the court cites a secondary source called the metamorphosis of the law of arson. And I am getting back to answering Your Honor's question. And what that kind of secondary source goes through is it categorizes the different arson laws throughout the jurisdictions of the United States. And some of those are cited in the appellate court opinions that we cite, too. And some talk about by means of fire or explosive. Some talk about by means of fire or burning. Some talk about means by explosives or burning. I think, Your Honor, the reason that they did it is because that was just the natural evolution of the statute to talk about fire and explosives. As to why they added destructive device, I can't answer that question. But I think ultimately where we get back to with all of these statutes, and that's what the appellate court opinions that we – the federal appellate court opinions we've cited talk about, is really what we look at is the fact that there's this ultimate burning. And so just a couple examples, if I can. You know, the Brown case that this court talked about, the statute there is causing a fire or explosion. The Bowie case we cite talks about the Tennessee arson statute, which is sets fire or burns. Nevada, which is the Espinoza case, talks about scorched chard or burning. You know, ultimately there are lots of different means that the different states have talked about the way you commit arson. But they come down to this bottom-line generic definition, which Indiana qualifies under, of causing a fire or explosion that really results in a burning. So the Indiana statute was modified after ACCA to include destructive device. Prior to that, it just said by fire or explosive, right? What are we to make of that? Your Honor, I think this court is – the job of this court as set forth in Duncan, as I understand it, is to interpret the statute at the time of the defendant's conviction. And so I'd love to be here and say ignore destructive device. I don't think that that's consistent with law of the categorical approach. I don't think this court needs to get hung up on the different means of getting to the damage that's the burning, though. Because whether it be by fire, explosive, or destructive device, Indiana requires a burning in every instance. I guess, you know, when I look at the prior Indiana statute, which says a person who by means of fire or explosive knowingly or intentionally damages, I think that, you know, your interpretation, I would think, I would agree with you. But once you add destructive device and then the definition of destructive device, that does throw a wrench into the statutory analysis. I agree with that, Your Honor. And that's why certainly I agree with Mr. Kanas. It'd be great if we had cases interpreting that. But, Your Honors, I think where the categorical approach and the Supreme Court's precedent kind of direct this court to go is to not come up with legal imaginations and legal hypotheticals that maybe you could commit a destructive device that results in damage without a burning. Right? That's not this court's role to interpret Indiana law and invent hypotheticals where Indiana law might ultimately end up. Rather, the question in Duenas-Alvarez is, is there a reasonable probability that Indiana is ever going to charge, prosecute, or convict a defendant for some sort of destructive device resulting in damage that does not have this corpus delicti of burning? And the defendant hasn't pointed to a case like that. I am unaware of any case that's interpreted the destructive device section, let alone in a way that is a destructive device arson without a burning. So I do think this court is constrained by Indiana's interpretation of its own law. Bless you, Your Honor. Thank you. Your Honor, I'm happy to answer any questions about aiding and abetting or the hat, what I guess we'll now call the Hatley issue. But unless this court has any questions on that, we'd rest on our wreaths on those issues. Okay. Very well. Thank you, Mr. Whalen. Thank you. Mr. Woodward. Yeah. We used your time and took a little extra, Mr. Whalen, so we'll give you a couple minutes on rebuttal. I appreciate that, Your Honor. Thank you. Corpus delicti, as I recall, 40 years ago almost in law school, had to do with whether or not a confession is admissible or not prior to the state proving whether or not there was a corpus delicti, a body of crime. That is, you need not only show there was a dead body, but that body had been, that person had been murdered. That is, there was some evil act or some homicide committed. So the case that the court was talking about in regards to arson, it was in that context. It wasn't interpreting the statute as it's currently written, so I don't think it's fair to extrapolate from that corpus delicti case to say, yeah, this is how we interpret that statute, because that's not what the court was addressing there. And because it wasn't addressed, it wasn't briefed, it wasn't discussed, and it wasn't written about. Just briefly, on the aiding and abetting issue, because the parties spent a lot of time on it, yesterday the government filed an additional authorities letter. We relied on Valdivia Flores out of the Ninth Circuit. The newest decision overturns that, but I would note, and it's a long decision, it was 38 printed pages, so that must be 60 pages in the reporter probably. The court was sitting in Banque. I know 11 judges participated. Four were in the majority, four concurred, and three dissented. Of the concurrence and the dissent, those seven disagreed with the reasoning of the majority. The concurrence said, we disagree with everything you say, but that's because you don't even have to engage in an aiding and abetting analysis. So I just wanted to point out, that case doesn't necessarily carry the day for the government, and if the court should happen to get to that issue, we'd rest on our feet. Okay. Thank you. Okay, very well. Thanks to both sides. Mr. Woodward, you're appointed, correct, to represent Mr. Gomez? We very much appreciate you accepting the appointment and for your advocacy on his behalf, and we'll take the appeal under advisement. Mr. Whalen, thanks to you as well.